Commonwealth *v.* Dravecz, Appellant.

Argued November 29, 1966. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Michael V. Franciosa,* for appellant.

*Frederick I. Charles,* Assistant District Attorney, and *George J. Joseph,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 21, 1967:

Joseph J. Dravecz was employed as a laborer by the Caisson Corporation which owned a trailer in which were stored many items of equipment being used on a construction job near Airport Exit No. 22 in Lehigh County. Some of this equipment disappeared and part or all of it was found on a farm owned by the parents of Dravecz. A couple of days later State Police questioned a Eugene Stockley, labor foreman for the Caisson Co., who gave the police a signed, notarized statement in which he said that Dravecz had appeared on a certain day at Stockley's residence with some of the missing Caisson equipment and asked Stockley to sell the equipment for him. When Dravecz learned of the visit to his parental home by the police, he volun-

tarily appeared at State Police headquarters and submitted himself to questioning by Corporal Poluka. He denied that he had taken the tools or was in any way criminally connected with them.

Corporal Poluka then brought Stockley before Dravecz and read to Dravecz the written statement which had been made by Stockley. Dravecz made no comment at the end of the reading of the statement. He was indicted on charges of burglary, larceny and receiving stolen goods, and found guilty on the three counts. He appealed to the Superior Court which affirmed the conviction and we allowed allocatur.

At the trial the statement made by Stockley was read to the jury. The defendant contends this was error and deprived him of his constitutional rights against self-incrimination under the Fifth Amendment to the Constitution of the United States.

The Supreme Court of the United States declared in *Malloy v. Hogan*, 378 U.S. 1, that:

"The Fourteenth Amendment secures against state invasion . . . the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence."

Thus, in speaking of the right of a defendant against self-incrimination in Pennsylvania, it is no longer necessary to distinguish between State and Federal cases. The protection against self-incrimination because of the 14th Amendment which guarantees to all United States citizens, no matter where located, the immunities proclaimed to them in Federal territory, applies as effectively in Pennsylvania and the other States as it does in territory actually under the jurisdiction of the United States government.

It accordingly follows that all cases which were decided in Pennsylvania prior to the *Malloy* decision are no longer authoritative if they conflict with the Fifth

Amendment to the Constitution of the United States, which declares that no person "shall be compelled in any Criminal Case to be a witness against himself."

The Superior Court, in affirming the conviction of the defendant, declared that it was bound by *Commonwealth v. Vallone*, 347 Pa. 419, which pronounced the proposition:

"The rule of evidence is well established that, when a statement made in the presence and hearing of a person is incriminating in character and naturally calls for a denial but is not challenged or contradicted by the accused although he has opportunity to speak, the statement and the fact of his failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made."

This rule, which has become known as the tacit admission rule, is too broad, wide-sweeping, and elusive for precise interpretation, particularly where a man's liberty and his good name are at stake. Who determines whether a statement is one which "naturally" calls for a denial? What is natural for one person may not be natural for another. There are persons possessed of such dignity and pride that they would treat with silent contempt a dishonest accusation. Are they to be punished for refusing to dignify with a denial what they regard as wholly false and reprehensible?[1]

The untenability of the tacit admission rule is illustrated in the following startling proposition. A de-

---

[1] In his funeral oration on Roscoe Conkling, Robert G. Ingersoll said: "He was maligned, misrepresented and misunderstood, but he would not answer. He was as silent then as he is now—and his silence, better than any form of speech, refuted every charge." George Bernard Shaw said: "Silence is the most perfect expression of scorn." The immortal Abraham Lincoln summed up his philosophy on this subject in characteristic fashion: "If I should read much less answer, all the attacks made upon me this shop might as well be closed for any other business."

fendant is not required to deny any accusation levelled at him in a trial no matter how inculpatory. He may be charged with the most serious of offenses, including murder and high treason. A cloud of witnesses may testify to circumstances, events, episodes which wrap him in a serpent's embrace of incrimination, but no inference of guilt may be drawn from his failure to reply or to take the witness stand. Indeed, and properly so, if the prosecuting attorney or the judge makes the slightest reference to the fact that the accused failed to reply to the accusations ringing against him, and a verdict of guilt follows, a new trial is imperative. And yet, under the *Vallone* holding, an accusatory statement made in any place chosen by the accuser, whether on the street, in the fields, in an alley or a dive, if unreplied to, may be used as an engine in court to send the defendant to prison or to the electric chair.

How so incongruous a doctrine ever gained solemn authoritativeness might well be a subject for a long article in a law review. Especially when one reflects on the fact that the rule is founded on a wholly false premise. One can understand how a principle of law built on solid rock might incline to slant from the perpendicular because of over-heavy superstructure piled on it as it rises higher and higher into the realm of hypothesis, but the tacit admission rule has no solid foundation whatsoever. It rests on the spongy maxim, so many times proved unrealistic, that silence gives consent. Maxims, proverbs and axioms, despite the attractive verbal packages in which they are presented to the public, do not necessarily represent universal truth.

Indeed, there are proverbs which contradict one another flatly, as, for instance, *a rolling stone gathers no moss,* as against *the traveling bee gathers the honey;*

or *look before you leap,* as against *he who hesitates is lost.*[2]

The very proverb *Silence gives consent* has a number of vigorous opponents in *Silence is Golden; Closed lips hurt no one, speaking may; Speech is of time, silence is of eternity; For words divide and rend, but silence is most noble till the end; And silence like a poultice comes to heal the blows of sound; Be silent and safe, silence never betrays you.*

It may be desirable and dramatic for the wrongly accused person to shout: "I am innocent!" but not everybody responds spontaneously to stimuli. The accusation may be so startling that the accused is benumbed into speechlessness. There are persons so sensitive and hurt so easily, that they swallow their tongue in the face of overwhelming injustice.

In *Alberty v. United States,* 162 U.S. 499, the Supreme Court said: "it is not universally true that a man, who is conscious that he has done a wrong, 'will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right and proper;' since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses."

Under common law and, of course, this was doubly true in medieval continental Europe, forced confessions were as common as they were cruel and inhuman. The framers of our Bill of Rights were too aware of the excesses possible in all governments, even a representative government, to permit the possibility that any

---

[2] Others are: *The Lord loveth a cheerful giver; Fools and their money are soon parted. The early bird catches the worm; the early worm gets caught. Absence makes the heart grow fonder; out of sight, out of mind.*

person under the protection of the United States flag could be forced to admit to having committed a crime. In order to make the protection hazard-proof, the framers went beyond coercion of confessions. They used the all-embracive language that no one could be compelled "to be a witness against himself". What did the trial court in this case do but compel Dravecz to be a witness against himself? Dravecz had said nothing, yet because something was read to him, to which he made no comment, the prosecution insisted that Dravecz admitted guilt. If Dravecz could not be made a self-accusing witness by coerced answers, he should not be made a witness against himself by unspoken assumed answers.

A direct confession unwillingly given is a coerced confession. A tacit admission is still an unwilling performance. It is more gentle because it is silent, but it is as insidious as monoxide gas which does not proclaim its presence through sound or smell. A forced confession is a steam-chugging locomotive moving down the track, blowing its whistle and clanging its bell with the victim tied to the rails. A tacit admission is a diesel locomotive silently but relently moving forward without audible signals and striking the victim unawares. The approach is different, the effect is the same.

If the police prepare a statement reciting facts, which precisely and physically point to the defendant as the author of a certain crime, and read it to him and he remains silent during the reading, the statement may not be introduced in evidence against him. Yet, under the *Vallone* doctrine, a third person may utter anything he pleases, charging the defendant with any crime at all, and if the defendant fails to answer, then that third person's unmonitored, unauthenticated declaration may doom him. No system of law should countenance so blatant an illogicality, so untrust-

worthy a procedure, and so unsportsmanlike and unfair a practice.

Under the tacit admission rule, if a suspect is taken to the scene of the crime where people have gathered, mouthing all sorts of rumors and suppositions against him, it becomes his duty to single out every scandalmonger, every irresponsible gossip bearer, every loose-tongued hanger-on and reply to their accusations. Otherwise, their inflammatory, unsworn reproaches and denouncements may become formal swords of indictment. This is not rule by reason but by unrestrained babblement.

A confession is defined by Wigmore as "one species of admission, namely, an admission consisting of a direct assertion, by the accused in a criminal case, of the main fact charged against him or of some fact essential to the charge." (IV Wigmore, Evidence, §1050, p. 7 (3d ed. 1940)). A tacit admission, according to *Vallone,* is an "implied admission of the truth of the charges thus made." It is more or less admitted that, without the tacit admission presented in the *Vallone* case, there could have been no conviction. The same could be true in the case at bar. As above stated, Dravecz voluntarily went to the police to be questioned, but he did not ask to be confronted by Stockley, nor to have any Stockley statement read to him. Springing a statement on him in this fashion suggests artifice. Requiring him to answer to it under pain of penalty spells illegality and injustice.

There is not the slightest suggestion in the record which would justify the intellectual conclusion that Dravecz knew that if he said nothing when Stockley's statement was read, his silence would be interpreted as an admission of guilt. Dravecz was a laborer, presumably with a minimum of formal education. Assuming that he might know, although there is no evidence even of this, that he was not required to answer ques-

tions put to him by the police, it is unrealistic, to say nothing of unjust, to assume that he knew that if he did not make some comment on Stockley's comments, this would prove he had committed a crime. Stockley's statement was a long one. It could have contained averments with which Dravecz agreed, and averments with which he disagreed as not being the truth. Was he sufficiently educated and trained in expression to analyze the wordy paper and specify what he regarded right and what he regarded wrong? The Supreme Court of the United States said in the monumental *Escobedo* case ". . . No system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens' abdication through unawareness of their constitutional rights." (378 U.S. 478)

Another infirmity in the tacit admission rule is that it invests hearsay with evidentiary authority which is not recognized in any of the exceptions to the hearsay rule.

The courts and the judges have not been silent in registering disapproval of the tacit admission rule. In the *Vallone* case itself, Chief Justice MAXEY filed a 20-page dissenting opinion bristling with authority, precedent and logic devastating to the rule. He called attention to the case of *Moore v. Smith,* 14 Sergeant and Rawle, 388, where this Court said anent tacit admissions: "That presupposes a declaration or proposition made to him, which he is bound either to deny or to admit . . . Nothing can be more dangerous than this kind of evidence; it should always be received with caution, and never ought to be, unless the evidence is of direct declarations of that kind, which naturally calls for contradiction . . . Of all evidence, loose, hasty conversation is entitled to the least weight."

In *Commonwealth v. Zorambo,* 205 Pa. 109, the prosecution introduced in evidence against the defend-

ant a statement made by a co-defendant at a magistrate's hearing when, according to the judge and the district attorney, the hearing had ended. Justice BROWN, speaking for this Court, said that the statement "cannot be regarded as any, not even the slightest, evidence of his guilt . . . That he kept silent was his right, as, at the time, he must have understood it, and manifest error was committed in submitting his silence to the jury as circumstantial evidence against him."

In *Hersey v. Barton,* 23 Vt. 685, the Supreme Court of Vermont said: "To hold that a person is bound, upon all occasions when his adversary, in his presence, is making statements to others and not addressed to him, but which are adverse to his interest, to repudiate the same, or that his silence should be taken as an admission of the truth of those statements, would in our judgment be unsound in principle and unwarranted by authority."

In *State v. Kissinger,* 343 Mo. 781, it was held that defendant's silence to a statement made by his wife in response to the inquiry of officers in his presence was inadmissible.

The New York Court of Appeals observed in *People v. Page,* 162 N.Y. 272: "It cannot be that there is any such anomaly in the criminal law as is involved in the proposition that an accused person, when charged with the offense in open court by indictment, may stand mute without prejudice to his innocence, while the same person is bound to deny neighborhood gossip with respect to his guilt at the peril of furnishing by silence evidence against himself when on trial upon the charge." In other words, if a prisoner while in the courtroom is entitled—as he is—to whatever "refuge" he can find in silence, he is equally entitled to that same "refuge" when he is outside the courtroom.

The decisions of the Supreme Court of the United States in *Malloy v. Hogan*, 378 U.S. 1, *Gideon v. Wainwright*, 372 U.S. 335, *Escobedo v. Illinois*, 378 U.S. 478, *Massiah v. United States*, 377 U.S. 201, and *Miranda v. Arizona*, 384 U.S. 436, have, in effect, shattered the tacit admission rule as pronounced in *Vallone*. Whatever may be left of the rule after the enfilading fire of the Supreme Court is here overruled.

We accordingly decide that it was improper for the trial court to have allowed the Stockley statement in evidence against the defendant Dravecz. The order of the Superior Court is reversed, the verdict of the jury set aside and the record remanded for a venire facias de novo.

CONCURRING OPINION BY MR. JUSTICE EAGEN:

For almost a century testimony of "tacit admission" was admissible in evidence in the courts of this Commonwealth as proof of an implied acquiescence on the part of the accused in the truth of the charges made against him. See *Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 85, 223 A. 2d 296, 298 (1966), and cases cited therein.

Despite criticism of this practice from varied sources,[1] Pennsylvania continued to adhere to the rule and, stamped with the imprimatur of time, it became a well established evidentiary rubric. The rule had some currency in practically every state jurisdiction,[2] as well as in the federal system.[3] Previous to 1966 the

---

[1] See, e.g., *Commonwealth v. Vallone*, 347 Pa. 419, 424, 32 A. 2d 889, 892 (1943) (MAXEY, C. J., dissenting) ; see also, Note, Tacit Criminal Admissions, 112 U. Pa. L. Rev. 210 (1963) ; Heller, Admissions by Acquiescence, 15 U. Miami L. Rev. 161 (1960).

[2] See 31A C.J.S., Evidence §§294-297 (1964).

[3] See Note, Silence as Incrimination in Federal Courts, 40 Minn. L. Rev. 598 (1956) ; see also, *Tucker v. United States*, 279 F. 2d 62 (5th Cir. 1960) ; *Dickerson v. United States*, 65 F. 2d 824 (D.C. Cir. 1933), cert. denied, 290 U.S. 665 (1933).

Supreme Court of the United States expressly considered the propriety of the "tacit admission" rule only once and there approved its application. *Sparf v. United States,* 156 U.S. 51, 56 (1895).

On October 7, 1966, this Court in *Commonwealth ex rel. Shadd v. Myers,* supra, recognized for the first time that evidentiary use of "tacit admissions" on the part of an accused offended the proscription included in the Fifth Amendment to the United States Constitution against self-incrimination and ruled that the use of such evidence was no longer permissible in criminal trials in this Commonwealth.[4] Our ruling in *Shadd* was directly responsive to a statement by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 468, n.37 (1966). However, since *Shadd* involved a collateral attack on a judgment finalized several years previously, we held that the new ruling declaring the evidentiary use of "tacit admissions" impermissible did not apply or affect the validity of the judgment therein.

The instant trial occurred in September, 1964, and the judgment comes before us for review on direct appeal. Hence, the retroactive application of our new ruling as to the use of evidence of "tacit admissions" at trial presents a problem not present in *Shadd.*

As noted before, our ruling in *Shadd* proscribing the use of such evidence was prompted by *Miranda v.*

---

[4] It is noteworthy that the Pennsylvania Constitutional analogue to the self-incrimination clause of the Fifth Amendment to the United States Constitution (Pa. Const. Art. I, §9) has never been utilized to judicially attack the use of "tacit admissions" in this Commonwealth. A probable reason is that the cases suggest that the Pennsylvania privilege must be claimed in order to be operative. See *Commonwealth v. Butler,* 171 Pa. Superior Ct. 350, 90 A. 2d 838 (1952) ; cf. *Commonwealth ex rel. Staino v. Cavell,* 207 Pa. Superior Ct. 274, 286, 217 A. 2d 824, 829 (1966) (HOFFMAN, J., dissenting).

*Arizona,* supra. Upon further consideration of the problem, it is now my conclusion that the bar to the use of such evidence flowed from the mandate of *Malloy v. Hogan,* 378 U.S. 1 (1964).[5] Since *Malloy* was decided on June 15, 1964, the question therefore arises: Must all trials subsequent thereto wherein such evidence was admitted be set aside? I conclude not. It is my view that the date the judgment was finalized is controlling, rather than the date of trial, and if the judgment was finalized before the pronouncement in *Miranda v. Arizona* on June 13, 1966, then the use of such evidence at trial does not necessarily invalidate the judgment.

The above conclusion is based on an analogy of the kindred decisions of *Griffin v. California,* 380 U.S. 609 (1965), and *Tehan v. United States ex rel. Shott,* 382 U.S. 406 (1966). In *Griffin,* the United States Supreme Court held for the first time that adverse judicial or prosecutorial comment to the jury on an accused's silence during a state trial violates the proscription against self-incrimination included in the Fifth Amendment to the federal Constitution. While this ruling was necessarily premised upon the prior ruling in *Malloy v. Hogan,* supra, nevertheless, in *Tehan v. United States ex rel. Shott,* supra, the court ruled that *Griffin* did not apply to all cases tried subsequent to *Malloy* but only to those not "finalized", in the sense of *Linkletter v. Walker,* 381 U.S. 618 (1965), as of the date the decision in *Griffin* was announced.[6]

---

[5] The relevant language in *Malloy* that prompts this conclusion is as follows: "The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Malloy v. Hogan,* 378 U.S. at 8.

[6] See *Tehan v. United States ex rel. Shott,* id. at 409, n.3 (especially last paragraph thereof).

The relationship between *Malloy* and *Miranda* in the realm of "tacit admissions" is closely analogous to the relationship between *Malloy* and *Griffin,* in the realm of adverse comment on an accused's silence at trial. Just as the decisional seed which later bloomed into *Griffin* is impliedly imbedded in *Malloy,* so too is *Miranda's* clear proscription of "tacit admission" evidence genealogically connected to *Malloy.* However, while the proscription against adverse comment on the accused's silence at trial was implicitly promulgated by *Malloy,* it was not explicated therein. This was left to *Griffin.* Likewise, while the proscription against evidentiary use of "tacit admissions" was implicit in *Malloy,* it was *Miranda* that first spelled it out. Hence, it logically follows from *Tehan* that the ruling banning the evidentiary use of "tacit admissions", first *explicated* in *Miranda,* need only be applied to those cases wherein the judgment was not finalized as of the date *Miranda* was announced.

Since the judgment in the instant case is not final, a new trial is mandatory.

Mr. Justice JONES, Mr. Justice COHEN and Mr. Justice O'BRIEN join in this opinion.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

While I join in Mr. Justice MUSMANNO'S sentiments regarding tacit admissions, I concur in the granting of a new trial in this case for the reasons stated in *Commonwealth ex rel. Shadd v. Myers,* 423 Pa. 82, 91, 223 A. 2d 296, 301 (1966) (dissenting opinion). See *Commonwealth v. Vallone,* 347 Pa. 419, 424, 32 A. 2d 889, 892 (1943) (dissenting opinion); *Commonwealth ex rel. Staino v. Cavell,* 207 Pa. Superior Ct. 274, 278, 217 A. 2d 824, 825 (1966) (dissenting

opinion); see also, Note, Tacit Criminal Admissions, 112 U. Pa. L. Rev. 210 (1963). Accordingly, I find it immaterial whether *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966) or *Malloy v. Hogan,* 378 U.S. 1, 84 S. Ct. 1489 (1964) compels the result reached in this case.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

This defendant was tried and convicted of burglary, larceny and receiving stolen goods. For approximately a century *the silence of a defendant* (or an accused) *when accused of a crime* or of participation in a crime amounted to a "tacit admission," and such testimony was admissible in evidence as proof of an implied acquiescence on the part of the defendant (or the accused) in the truth of the criminal charges or accusations made against him.

The Supreme Court of the United States, merely by a footnote in *Miranda v. Arizona,* 384 U.S. 436, 468 (June 13, 1966) has apparently overruled this important and long established law. However, *Johnson v. New Jersey,* 384 U.S. 719, specifically decided that *Miranda v. Arizona was not to be applied retroactively,* and this Court so held in *Commonwealth ex rel. Shadd v. Myers,* 423 Pa. 82, 85, 223 A. 2d 296, 298.

If the Supreme Court intends to overrule a law which has been established for approximately one hundred years, it would remove all doubt if the Court specifically overruled in the body of its Opinion all its prior contrary Opinions.

For this reason, I dissent and would affirm the judgment of sentence.