J-S45028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WENDELL SIMPKINS | : | |
| | : | |
| Appellant | : | No. 3408 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006080-2017

BEFORE:   BENDER, P.J.E., MURRAY, J., and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:                  **FILED AUGUST 29, 2019**

Wendell Simpkins (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of persons not to possess, use, manufacture, control, sell or transfer firearms[1] (possession of a firearm). Appellant challenges the sufficiency of the evidence and the admission of certain trial testimony.  Upon review, we affirm.

The Commonwealth charged Appellant with one count of possession of a firearm, committed on May 17, 2017.  The case proceeded to a jury trial on August 22, 2018.  The trial court summarized:

> [Philadelphia Police Officer Milton] Celce testified that around 11:20 a.m. on May 17, 2017, while patrolling alone in a marked police car, he received two radio calls advising of "gunshots" at

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

two neighboring locations in [Philadelphia:] 25th Street and Ridge Avenue, and . . . 27th Street and Ridge Avenue. Officer Celce responded to this general area[. As] Officer Celce [relayed] over police [radio] that [his] particular location was "clear," he saw in his "peripheral" vision a "muzzle flash" down the 1700 block of Newkirk Street, near its intersection with Cecil B. Moore Avenue. Officer Celce heard gunshots [at the same time. N.T. Trial, 8/22/18, at 23-25, 30-32.]

Looking down Newkirk Street, which is a one-way street with only one-sided parking, Officer Celce observed a black male standing outside a dark-colored vehicle that was the only vehicle "in the middle of the street." Officer Celce saw the man enter the driver's side of the vehicle and speed away. Officer Celce then pursued the vehicle for several blocks[.] Officer Celce was joined in the pursuit by [Philadelphia Police Officers Joseph] Kochmer and [Brian] Hollman in one patrol car, and by [Philadelphia Police Officers] Ozorowski and [Iroabuchi] Ndukwe in another patrol car. [N.T. Trial, 8/22/18, at 32-36.]

Officer Celce testified that [he ultimately stopped the dark-colored vehicle.] Officer Celce approached the vehicle on foot and observed fired cartridge casings ("FCCs") . . . on the front and rear windshields. The FCCs on the front windshield laid between the windshield wipers and the glass. . . . Appellant was the driver of the vehicle, which was a 2007 black Nissan Maxima. [Louis Garnette was in the passenger seat. N.T. Trial, 8/22/18, at 37-38.]

. . . Officer Kochmer testified that he and Officer Hollman first responded to the area of 25th Street and Montgomery Avenue and determined it was "clear," meaning there was no indication of recent gunshots. However, while subsequently proceeding to North Newkirk Street, Officer Kochmer heard around [10] gunshots near the intersection of Newkirk Street and West Jefferson Street. Officer Hollman [saw that] a vehicle had just sped away from this intersection at "a high rate of speed," [and they pursued it. N.T. Trial, 8/22/18, at 67-72.]

[Officer Kochmer testified that once the vehicle was stopped, he searched and secured Appellant.] Officer Kochmer thereafter searched the vehicle's interior and discovered [a] firearm "underneath the backseat pushed between the cushion and the floorboard." The gun was located beneath the center of the

backseat, which had been "pushed up" to form a "little void." Officer Kochmer [also discovered] inside the void and felt . . . a 40-caliber Glock Smith & Wesson loaded with ten (10) live rounds [and] an empty 22-round gun magazine. [N.T. Trial, 8/22/18, at 71-73, 75-82.]

Officer Ndukwe testified that after Appellant stopped the vehicle, he approached the vehicle's passenger side and Mr. Garnette immediately advised that he possessed a gun as well as a carry permit. Officer Ndukwe recovered the firearm from Mr. Garnette's waistband and recovered a black magazine from Mr. Garnette's right pocket. The gun was loaded with twelve 9-millimeter rounds and had a live round in its chamber. The magazine contained sixteen 9-millimeter rounds. [N.T. Trial, 8/22/18, at 95-102.]

Trial Court Opinion, 3/7/19, at 2-4 (footnotes omitted).

The following exchange and objection by Appellant's counsel occurred during the Commonwealth's direct examination of Officer Ndukwe, regarding Appellant's passenger, Mr. Garnette:

[COMMONWEALTH:] Did [Garnette] tell you about the gun found in the backseat?

[OFFICER NDUKWE:] No.

Q. Did he claim that gun?

A. No.

[APPELLANT'S COUNSEL:] Objection, Your Honor.

THE COURT: Overruled.

N.T. Trial, 8/22/18, at 102.

The trial court further recounted:

[Philadelphia Police Detective Sean] McCaffery testified that he responded to the vehicle stop and observed two FCCs on the vehicle's exterior front windshield, and one FCC on its exterior rear

windshield. The FCCs were 40-cailber. Detective McCaffery also responded to the 2800 block of West Jefferson Street, which is "right around the corner" from the 1700 block of Newkirk Street, and from there he recovered fourteen 40-caliber FCCs [from] the street and sidewalk. [N.T. Trial, 8/22/18, at 110-113, 125.]

[Philadelphia Housing Authority Police Officer Thomas] Vetri testified that around 1:00 a.m. on May 18, 2017 [approximately 13 hours after the vehicle stop,] he responded to a report of vandalism at 1713 North Newkirk Street. There, Officer Vetri observed a bullet hole in the first-floor window of the residence and discovered a bullet fragment inside the home. [Officer Vetri also] "located eight 40 caliber shell casings at the northwest corner of Cecil B. Moore and North Newkirk Street." [N.T. Trial, 8/22/18, at 131-137.]

[Philadelphia Police Officer Daniel Cha was called as an expert in firearms identification. He testified that] the 40-caliber Smith & Wesson recovered from beneath the backseat of the vehicle which Appellant was driving . . . was operable and had gunshot residue in its barrel. Moreover, Officer Cha testified that the three (3) FCCs recovered from the vehicle's front and rear windshields, and the fourteen (14) FCCs recovered from the 2800 block of West Jefferson Street, were fired from the . . . gun recovered from beneath the vehicle's backseat. On the other hand, the eight (8) FCCs recovered from the 1700 block of Newkirk Street were [not fired from the gun found in the vehicle nor the gun] recovered from Mr. Garnette's person. [N.T. Trial, 8/22/18, at 149-152, 157-160, 165-168, 170-171].

Trial Court Opinion, 3/7/19, at 5-6 (footnotes omitted).

The Commonwealth's theory of the case was that Appellant was in both actual and constructive possession of the gun found under the seat of the vehicle. N.T. Trial, 8/22/18, at 11-12, 78-79. The parties stipulated that Appellant had a prior conviction of possession with intent to deliver a controlled substance (PWID). *Id.* at 180-181.

Appellant did not testify or otherwise present a defense.

The jury found Appellant guilty of the sole charge, possession of a firearm. On October 29, 2018, the trial court sentenced Appellant to 5 to 10 years of imprisonment.

Appellant filed a timely post-sentence motion, which the trial court denied. He filed this timely appeal on November 16, 2018. Appellant filed a Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal, and the trial court issued an opinion on March 7, 2019.

Appellant presents two issues for our review:

1. Did the Trial Court err in finding the evidence admitted at trial was sufficient to sustain the verdict for count 1, violation of the Uniform Firearms Act under Pa. Crimes Code Section 6105 as the evidence failed to prove that Appellant constructively possessed the gun in this case?

2. Did the Trial Court err in overruling the defense's objection to Officer Ndukwe to explain what Mr. Garnette, the passenger in Appellant's car, said or what he meant and 'claimed' by his actions because that testimony amounted to an assertion amounting which was hearsay and it violated Appellant's confrontation rights?

Appellant's Brief at 3.

In this first issue, Appellant argues that the evidence was insufficient to support his conviction because the Commonwealth failed to show that he directly or constructively possessed the gun recovered from under the seat of the vehicle. Appellant emphasizes that the FCCs found where he was initially observed standing — on the 1700 block of Newkirk Street — did not match the gun, and the FCCs that did match the gun were recovered from "a

different, but close," location. Appellant's Brief at 10. Appellant contends that this case is analogous to **Commonwealth v. Parrish**, 191 A.3d 31 (Pa. Super. 2018), in which this Court found insufficient evidence for possession of a firearm where the defendant was in the back seat of a vehicle with his hand on the seat in front of him, drug contraband and guns were found "toward the front of the car," and the defendant "was not seen making any movements toward" the contraband. **Id.** at 9. We disagree.

This Court has stated:

We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact — while passing on the credibility of the witnesses and the weight of the evidence — is free to believe all, part, or none of the evidence. "Because evidentiary sufficiency is a matter of law, our standard of review is de novo and our scope of review is plenary."

**Parrish**, 191 A.3d at 36 (citations omitted).

Our Crimes Code defines possession of a firearm, in part, as follows:

A person . . . whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1). Subsection (c) provides that any person convicted of an offense under the Controlled Substance, Drug, Device and Cosmetic Act may not possess a firearm. **See** 18 Pa.C.S.A. § 6105(c). Appellant does not dispute that his prior conviction of PWID precluded him from possessing a

firearm under Section 6105(a)(1) and (c).

> This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." . . . "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." ["C]onstructive possession may be established by the totality of the circumstances."

> It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

> [A] defendant's mere presence at a place where contraband is found or secreted is insufficient . . . . Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.

*Parrish*, 191 A.3d at 36-37 (citations omitted).

In *Parrish*, police officers conducted a traffic stop of a four-door sedan. *Parrish*, 191 A.3d at 33. Upon approaching the vehicle, the officers saw the vehicle "rocking back and forth . . . in a violent manner" and noticed the driver "straddling the center console between the two front seats and [saw a] handgun protruding from under the front passenger seat." *Id.* Meanwhile, the defendant sat behind the driver's seat with his hands on the driver's seat headrest. *Id.* The officers found a black bag containing a gun and drugs on the floor in front of the front passenger seat; a second gun protruding from under the front passenger seat; marijuana in the front passenger door; and a

magazine of bullets in the glove compartment. *Id.* This Court further noted testimony that when the defendant was seen entering the vehicle, he did not have any bag; there was no evidence that the defendant was ever seated in the front of the car; and the evidence established that he did not have keys to the car and was not the owner or operator of it. *Id.* at 38. We concluded that the evidence was insufficient to show that the defendant, seated in the rear of the vehicle, had dominion and control over any of the contraband found in the front passenger area of the vehicle. *Id.* at 37-38.

Here, the trial court concluded that the Commonwealth's evidence, viewed in the light most favorable to the Commonwealth, "amply sustained the jury's finding that Appellant had the power and intent to control the gun recovered from the vehicle he drove, and that he therefore possessed the firearm." Trial Court Opinion, 3/7/19, at 9. The court reiterated that "Appellant was at the **exact** location where Officer Celce observed a muzzle flash and heard gunshots," and "immediately after," Officer Celce saw Appellant enter the driver's side of the vehicle and speed away. *Id.* at 8-9 (emphasis in original). The court also cited evidence that (1) "[w]hen officers stopped [Appellant's] vehicle after a high-speed pursuit lasting approximately one minute, they . . . discovered three FCCs laying on the front and rear windshields"; (2) the FCCs matched the "loaded handgun stashed in a void beneath the [center of the] vehicle's backseat"; and (3) fourteen (14) additional FCCs, which likewise matched the gun, "were recovered along the

2800 block of West Jefferson Street, which is the same area where officers heard gunshots." *Id.* at 8-9.

Appellant's sufficiency argument ignores the above evidence, as well the trial court's review of the totality of the evidence. We disagree with Appellant's claim that the facts in this case are analogous to those in *Parrish*. Here, the record supports the trial court's determination that the evidence was sufficient for the jury to conclude that Appellant exercised dominion and control over the gun recovered from the vehicle. *See Parrish*, 191 A.3d 36-37. Appellant's first issue lacks merit.

In his second issue, Appellant claims Officer Ndukwe's testimony — that the passenger "Garnette never claimed the" gun found in the vehicle — was hearsay, and violated Appellant's rights under the state and federal confrontation clauses.[2] Appellant advances several unrelated theories. First, he asserts that "[t]he line of questions and answers . . . amounted to an implied **assertion**," and "implied assertions can be considered hearsay which should be excluded from trial if [the] substantive effect [is] to prove the [defendant's] guilt." Appellant's Brief at 11 (emphasis added). Appellant then avers that "implied **admissions** are assertions and therefore can be hearsay." *Id.* (emphasis added). Appellant concedes that the cases he cites "involve

---

[2] Generally, the Confrontation Clause in "[t]he Sixth Amendment to the United States Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Commonwealth v. Allshouse*, 36 A.3d 163, 170 (Pa. 2012).

the defendant's statements and . . . silence," whereas here, "the testimonial assertion came not from [Appellant], but from the passenger of the car." *Id.* at 12. Finally, Appellant asserts that "the question of Officer Ndukwe was not proper to show subsequent police conduct as authorized in *Commonwealth v. Palsa*, 555 A.2d 808, 810 (Pa. 1989)." *Id.*

At the outset, we recognize that the "admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion." *Commonwealth v. Parker*, 104 A.3d 17, 21 (Pa. Super. 2014). Generally, hearsay is not admissible. Pa.R.E. 802. The Pennsylvania Rules of Evidence define hearsay as:

> [A] statement that
>
> (1) the declarant does not make while testifying at the current trial or hearing; and
>
> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c). A "statement" is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a).

With respect to an implied assertion, this Court has explained:

> There are clearly situations in which an utterance, although grammatically formulated as a question, makes an implied assertion. For example, "Can you give me that pocket watch sitting on your desk?," asserts that a pocket watch is sitting on your desk. Similarly, "Is Mr. Smith, the newest teacher at the school, your neighbor?," asserts that Mr. Smith is the newest teacher at the school. To hold that such utterances can never be considered hearsay would permit the admission of any out-of-

- 10 -

court declaration as long as it was phrased as a question, instead of a direct assertion.

***Parker***, 104 A.3d at 23. "[W]hen a **question** includes an implied assertion, the **question** constitutes a statement for the purpose of Rule 801(a). If that statement is offered for the truth of the matter asserted, it is hearsay and is generally inadmissible." ***Id.*** at 24 (emphases added).

We agree with the trial court's conclusion that Officer Ndukwe's statement was not hearsay. ***See*** Trial Court Opinion, 3/7/19, at 13. As set forth above, his testimony was as follows:

> [COMMONWEALTH:] Did [Garnette] tell you about the gun found in the backseat?
>
> [OFFICER NDUKWE:] **No.**
>
> Q. Did he claim that gun?
>
> A. **No.**

N.T. Trial, 8/22/18, at 102 (emphases added).

The disputed testimony was thus "No." and "No." N.T. Trial, 8/22/18, at 102. Officer Ndukwe did not testify, as Appellant argues, that Garnette made any statement along the lines of "That gun is not mine." ***See*** Appellant's Brief at 13 (stating "the admission of out-of-court assertions that Garnette did not possess the guns would be prejudicial to Appellant."). Instead, the officer simply answered in the negative when asked whether Garnette made any statements about the gun. Trial Court Opinion, 3/7/19, at 13 ("[Officer] Ndukwe's challenged testimony did not introduce or concern any 'oral

assertion, written assertion, or nonverbal conduct' that Mr. Garnette 'intended . . . as an assertion.'"). We thus conclude the court did not abuse its discretion in overruling Appellant's objection. *See Parker*, 104 A.3d at 17.

Further, Appellant's understanding of an implied assertion is mistaken. Officer Ndukwe did not testify as to any question, uttered by Garnette or anyone else, that implied any particular fact. *See Parker*, 104 A.3d at 23-24.

Also, Appellant's fleeting discussion of implied admissions is likewise meritless.[3] *See* Appellant's Brief at 11. He cites *Commonwealth v. Vallone*, 32 A.2d 889 (Pa. 1943), *overruled by Commonwealth v. Dravecz*, 227 A.2d 904 (Pa. 1967), which defined an "implied admission" as a defendant's silence in response to a statement that incriminates the defendant "and naturally calls for a denial." *Vallone*, 32 A.2d 889. Under *Vallone*, the silence is admissible "as an implied admission of the truth of the charges." *Id.* Appellant, however, correctly notes that *Vallone* was overruled in *Dravecz*, 227 A.2d 904. Appellant's Brief at 11. *Dravecz* held that a defendant's silence was protected under the Fourteenth Amendment to the U.S. Constitution's right to remain silent and the then-recently decided decision in *Miranda v. Arizona*, 384 U.S. 436 (1966).

Appellant's reliance on a pre-*Miranda* rule, acknowledged to be

---

[3] Appellant's entire argument spans two sentences, includes citation to five cases, but does not otherwise discuss the cases. Appellant's Brief at 11-12.

- 12 -

overruled 52 years ago, is incorrect. In any event, Officer Ndukwe's testimony would not establish any "implied admission" under the old rule; the disputed evidence was not that Appellant was silent in response to a statement. *See Vallone*, 32 A.2d 889.

Finally, Appellant's argument under *Palsa* is waived for failure to present a developed argument with discussion of pertinent authority. *See Commonwealth v. Plante*, 914 A.2d 916, 924 (Pa. Super. 2006) (failure to develop argument with citation to and analysis of relevant authority waives issue on review). Appellant's entire discussion reads:

> Lastly, the question of Officer Ndukwe was not proper to show subsequent police conduct as authorized in *Commonwealth v. Palsa*, 555 A.2d 808, 810 (Pa. 1989). The evidence elicited passed that point and went into substantive details to implicate Appellant as in *Commonwealth v. Yates*, 613 A.2d 542 (Pa. 1992).

Appellant's Brief at 12. This passage does not explain the principle of law relied upon nor explain why it applies to particular facts in this case. "This Court will not make Appellant's arguments for him." *Commonwealth v. Brewington*, 740 A.2d 247, 253 n.2 (Pa. Super. 1999).

In sum, neither of Appellant's issues merit relief, and we therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/19