Commonwealth *v.* Oister et al., Appellants.

252

Argued March 19, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*William F. Fox,* for appellant.

*Robert Trucksess,* for appellant.

*William C. Cahall, III,* Assistant District Attorney, with him *Richard S. Lowe,* District Attorney, for Commonwealth, appellee.

OPINION BY FLOOD, J., June 13, 1963:

These appeals are from convictions of arson. The Commonwealth presented evidence that a very intense fire in the early morning hours destroyed a building belonging to Brile Brothers and used as an automobile storage garage, a repair shop and an office, causing a loss of approximately $200,000. Wilmer Boardman, a special agent of the National Board of Fire Underwriters, who qualified as an expert, testified that the fire was of incendiary origin. Two witnesses testified

that about a week before the fire Brockerman asked each of them to set fire to the building, promising them money for doing so. Other witnesses testified that Brockerman made purchases beyond what his known income would warrant shortly after the fire. The Commonwealth also introduced Oister's confession that he had hired Brockerman to set the fire but the court charged the jury that this should not be taken as evidence against Brockerman.

The principal question raised by Oister on his appeal is that the confession should not have been admitted in evidence because there was not sufficient proof of the corpus delicti and the confession was involuntary. The principal complaint of Brockerman is that his motion for severance should have been granted and that the admission of Oister's confession was seriously prejudicial to him despite the trial judge's instruction that the jury should not consider it against him.

1. It is settled law in this Commonwealth that the opinion of an expert as to the incendiary origin of a fire is sufficient to establish the corpus delicti so as to authorize the admission of a confession of guilt by the defendant. *Commonwealth v. Krzesniak,* 180 Pa. Superior Ct. 560, 119 A. 2d 617 (1956). Boardman's qualifications as an expert are ample and there is no serious attack upon them. Oister's complaint is that Boardman's cross-examination and the other testimony in the case indicates that his opinion was based upon evidence that was so inconclusive that the opinion can be given no credence and without it the proof of the corpus delicti is totally insufficient.

He argues that a number of other witnesses for the Commonwealth could have qualified as experts but were not asked to give an opinion; that Boardman was not present at the time of the fire and did not interview the person who discovered the fire or the other witnesses who were present or the photographers who took pic-

tures of the fire, but based his opinion entirely upon an examination of one burned bus out of the twenty buses that were stored in the garage; that he arrived on the scene three days after the fire and found that this bus was more severely damaged than the others and was stored in an area immediately behind the office and fixed this spot as the hottest point of the fire and the point where there had been the greatest fire concentration; that he concluded that this was the point of origin and confined his investigation thereafter to this bus and the area immediately surrounding it.

Boardman found remains of a burned broom lying beside or under the bus and when he dismantled the gas tank attached to the bus the bottom of the tank was found to contain five holes which he concluded had been driven into the tank by someone who had crawled under the bus, with a clearance of only fifteen inches and punched the holes with a hammer, drop-pin or other tool and the gas flowed from these holes and had later been ignited. Upon cross-examination, he testified that he had examined none of the gas tanks on the other buses and did not know whether there were similar holes in any of those tanks. He said that the person who punched the holes would necessarily have gasoline on his clothing as a result and it was unlikely that he could have lit the fire without injuring himself but it may have been lit by somebody else.

The defendant argues that the other evidence in the case destroys this opinion. He points out that the tanks were fastened to the truck by metal straps about two inches in width, fastened tightly against the bottom of the tank, but insulated from it by strips of fabric. These straps had been removed at the time of the trial but their outline was plainly visible on the tank. The five holes were in the area where the strap had been and must have been under or partially under the strap. They were also directly under the spot welds which at-

tached certain baffles to the interior surface of the tank. Lt. Hicklin testified that the straps were centered over the baffles. The Commonwealth's witnesses testified, however, that it appeared that these holes had been punched at an angle so that some one could have punched them as they were without having first removed the strap.

Oister argues that either the strap would have to be removed to punch the holes, or on any attempt to drive them between the strap and the tank they would have to be driven at such an angle to the perpendicular that the tool could not be driven through the sheet steel but would slip across the surface of the tank. He contends that if the holes were driven in this way the tank and the strap would have been marked with scratches or similar marks, none of which were apparent on either. Two experts testified for the Commonwealth that the holes could be punched without removing the strap.

An expert for the defendant testified that there were also holes at the site of welds in the top of the tank, which could not have been punched and that in his opinion all the holes resulted from an expansion or explosion of the tank due to the heat rupturing the welds which caused the five holes.

All of this is for the jury. If, having considered his examination and cross-examination, they credit Mr. Boardman's opinion that this fire was incendiary, the corpus delicti was established. The contradictory explanations of what happened were for the jury. The confession was properly admitted subject to the instructions which the court gave that it should not be considered against Oister unless the jury believed, from the testimony of Boardman and other testimony in the case, that the fire was of incendiary origin.

Oister's argument that his confession was involuntary is based upon the fact that he suffered from diabetes and certain other diseases, that he was picked up

between 9:30 and 11:30 a.m. and subjected to questioning until noon, then locked in a cold cell, questioned again at 3:30 or 3:35 p.m. and then taken out of the cell at 4 p.m. and questioned by State Police. He signed the confession about 6 p.m. He says that he became emotionally upset as a result of this treatment, cried at frequent intervals during the questioning and confessed in an effort to seek relief from the physical and psychological coercion of the police. One witness testified that he was promised that if he cooperated the courts would be lenient.

His statement that leniency had been promised to him was contradicted by several Commonwealth witnesses. Sergeant Hoffman, of the State Police, testified that before taking Oister for questioning, he asked his personal physican whether, in view of his condition, he could be questioned and the doctor told them that it was all right to talk to him. He was offered food at a fairly early hour during the questioning but declined it until after he received an insulin shot, which was given him during the course of the questioning by a doctor who came to the police station for the purpose. The police testified that the statement was typed out and read to the defendant, that he read it himself and signed it voluntarily and afterward indicated his relief at having the matter off his chest. He thanked the police officers and shook hands with each of them.

Whether or not this confession was voluntary was for the jury under proper instructions. There is no evidence of threats, the promise of leniency was denied by several witnesses and whether the circumstances were such as to overbear the resistance of a normal person in his condition was for the jury. The testimony here does not require the court to hold as a matter of law that the confession was taken under such circumstances as would make it involuntary. We do not have here such circumstances as to the duration

and condition of detention, continuous questioning over a long period, implied threats in the attitude of the police and the use of various physical and psychological pressures to sap and destroy the defendant's power of resistance and self-control in view of his physical and mental state, as existed in the cases relied upon by Oister. See *Turner v. Pennsylvania*, 338 U. S. 62 (1949); *Johnson v. Pennsylvania*, 340 U. S. 881 (1950); and *Spano v. New York*, 360 U. S. 315 (1959).

The test laid down by the Supreme Court of the United States in *Culombe v. Connecticut*, 367 U. S. 569 (1961), was not disregarded by the trial court as it was in *Commonwealth v. Williams*, 197 Pa. Superior Ct. 184, 176 A. 2d 911 (1962). Here there is no complaint about the charge and the voluntariness of the confession was properly left to the jury under proper instructions by the trial judge.

The defendant Oister also claims immunity under the Act of April 27, 1927, P. L. 450, §4, as amended, 35 PS §1184. This act provides immunity only to a person summoned by the State Police and compelled to testify in relation to any matters subject to their inquiry and investigation, the immunity to extend to **any matter** concerning which he is compelled so to testify. Oister was not summoned and compelled to testify at the hearing of the State Police. He was requested by the Fire Marshal of Pennsylvania State Police to attend a private investigation held by the marshal and his assistants at the police station in Boyertown, Pennsylvania, and voluntarily gave testimony which was recorded, sworn to and subscribed before a justice of the peace. Such a situation is not covered by the act. *Commonwealth v. Friedman*, 94 Pa. Superior Ct. 491 (1928); *Commonwealth v. Greenberg*, 143 Pa. Superior Ct. 203, at 218, 17 A. 2d 698, at 705 (1941).

The fact that Oister was convicted of both arson and accessory after the fact to arson does not require a new trial. Only one sentence was imposed.

The defendant's other complaints relate to the disposition of matters which are entirely within the discretion of the trial court. This discretion was not abused.

2. The defendant Brockerman complains that his request for severance was not granted and the jury consequently heard Oister's confession which was not admissible against him and that this was so prejudicial to him that no instruction from the court, however strong, could remove its effect from their minds.

The evidence against Brockerman consisted of (1) the testimony of two witnesses who said that at various times before the fire he offered them money to set fire to the garage, the latest of these offers being about twenty-four hours before the fire, (2) testimony of one of them, Seasholtz, that Brockerman suggested a method of setting the fire very similar to that which the evidence indicated was actually used and told him that the time to do it was between 2 and 3 A.M.; (3) evidence that after the fire he had or spent more money than his earnings; and (4) evidence that in the toolbox of his automobile was found a tool which fit one of the holes in the gas tank and that this toolbox smelled of gasoline.

No witness placed him in the building or anywhere in the vicinity of the building during the time of the fire or within any reasonable period before or after the fire. He was not connected with the owners of the building and there was no evidence that he had ever been employed there or had frequented the building or had any method of easy access to it unless this might be inferred from Seasholtz' testimony that he informed him of a means of access to the garage. While the evidence, exclusive of the Oister confession, may have been

sufficient to convict him, it was not of such strength as to exclude the possibility that Brockerman was seriously prejudiced by the fact that the jury which convicted him heard Oister's confession that he had hired Brockerman to set the fire and paid him for doing so. While we do not say that the trial judge was in error in refusing to sever the cases of the two defendants for trial when the application was made, in view of the result we conclude that Brockerman may well have been seriously prejudiced by the introduction of Oister's confession during the joint trial, and the conviction under the circumstances, cannot stand.

Judgment as to Oister affirmed.

The judgment of conviction against Brockerman is reversed and a new trial is ordered.

ERVIN, WRIGHT, and WOODSIDE, JJ., would affirm on the opinion of the court below.