## Commonwealth ex rel. Savage v. Russell

*John W. Packel*, for relator.

*Michael M. Baylson*, for respondent.

JAMIESON, P. J., July 1, 1966.—Relator is currently serving a sentence of seven and one-half to 15 years imposed on January 7, 1964, following his conviction of the crimes of rape, conspiracy to rape and burglary. The trial was before Hon. David L. Ullman sitting without a jury. By petition for writ of habeas corpus, relator has raised three issues:

1. That he was denied due process of law in violation of the Sixth Amendment by failure of the juvenile court to appoint counsel for relator at the hearing, at which he was certified for trial as an adult;

2. Prejudicial error was committed requiring a new trial by reason of the admission into evidence of confessions given by two codefendants, both of said confessions having implicated relator; and

3. Defendant's conviction resulted from perjured testimony, thus requiring a new trial.

## I. Right to Counsel

The issue of the right of a juvenile to have counsel appointed for him at a hearing in juvenile court, at which it is determined whether jurisdiction will be retained by that court or whether the juvenile will be certified for trial as an adult, has been squarely raised and determined in the negative in the case of Commonwealth ex rel. Walls v. Rundle, 414 Pa. 53 (1964). The Supreme Court, speaking through Justice Roberts, answered the question in this manner, at page 56:

"The hearing in Juvenile Court was solely to determine whether or not to certify the case to the criminal courts. It was not a criminal hearing which in any way required the appointment of counsel. See Holmes' Appeal, 379 Pa. 599, 109 A. 2d 523 (1954), cert. den., 348 U. S. 973 (1955). It had no bearing upon either the procedural or substantive aspects of the conviction in criminal court".

In Holmes' Appeal, supra, the Supreme Court described the basic concept of juvenile court proceedings as follows, at page 603:

"The proceedings in such a court are not in the nature of a criminal trial but constitute merely a civil inquiry or action looking to the treatment, reformation and rehabilitation of the minor child. Their purpose is not penal but protective,—aimed to check juvenile delinquency and to throw around a child, just starting, perhaps, on an evil course and deprived of proper parental care, the strong arm of the State acting as parens patriae. The State is not seeking to punish an offender but to salvage a boy who may be in danger of becoming one, and to safeguard his adolescent life. Even though the child's delinquency may result from the commission of a criminal act the State

extends to such a child the same care and training as to one merely neglected, destitute or physically handicapped. No suggestion or taint of criminality attaches to any finding of delinquency by a Juvenile Court".

Counsel for relator argues vigorously, and we agree, that Commonwealth ex rel. Walls v. Rundle, supra, has been overruled implicitly, if not directly, by the Supreme Court of the United States in Kent v. United States, 383 U. S. 541 (1966). It is clearly the obligation of this court to follow precedents of the Supreme Court of Pennsylvania unless decisions of the Supreme Court of the United States have manifestly overruled such precedents. In Kent, the Supreme Court has indicated in the strongest possible language its opinion that waiver of jurisdiction proceedings in the District of Columbia Juvenile Court are so "critically important" to the juvenile that counsel should be present at such hearing unless intelligently and knowingly waived. The reasoning of the opinion is such that we feel bound to follow the decision in this jurisdiction.

The expression "critically important" has been used by the Supreme Court heretofore in determining what phase of criminal prosecutions is reached by the Sixth Amendment's guarantee of counsel for indigent defendants (made applicable to the State courts through the Fourteenth Amendment in Gideon v. Wainright, 372 U. S. 335). Thus, in White v. Maryland, 373 U. S. 59, a preliminary hearing before a magistrate was held to be so critically important that counsel was required where a plea of guilty entered by defendant without benefit of counsel was used against him at the time of trial. In Hamilton v. Alabama, 368 U. S. 52, arraignment was held to be a critical proceeding because certain defenses, such as insanity, had to be pleaded at that time or waived.

It was against this background that the Supreme

Court, in Kent, supra, speaking through Justice Fortas, without direct reference to the aforesaid decisions, expressed the following, at pages 556 and 557:

"It is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile. The Court of Appeals for the District of Columbia has so held. See Black v. United States, supra; Watkins v. United States, . . . 343 F. 2d 278 [C.A.D.C. Cir. 1964]. The statutory scheme makes this plain. The Juvenile Court is vested with 'original and exclusive jurisdiction' of the child. This jurisdiction confers special rights and immunities. He is, as specified by the statute, shielded from publicity. He may be confined, but with rare exceptions he may not be jailed along with adults. He may be detained, but only until he is 21 years of age. The court is admonished by the statute to give preference to retaining the child in the custody of his parents 'unless his welfare and the safety and protection of the public can not be adequately safeguarded without . . . removal'. The child is protected against consequences of adult conviction such as the loss of civil rights, the use of adjudication against him in subsequent proceedings, and disqualification for public employment. D. C. Code, §§11-907, 11-915, 11-927, 11-929 (1961).

"The net, therefore, is that petitioner—a boy of 16 —was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the 'exclusive' jurisdiction of the Juvenile Court. In these circumstances, considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the District Court was potentially as important to petitioner as the difference between five years' confinement and a death sentence, we conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing including access by his counsel to

the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel".

At page 562, the court notes:

"The Court of Appeals has held in *Black, and we agree,* that counsel must be afforded to the child in waiver proceedings". (Italics supplied.)

The court declined ". . . to rule that constitutional guaranties which would be applicable to adults charged with the serious offenses for which Kent was tried must be applied in [all phases of] juvenile court proceedings concerned with allegations of law violation": page 556. On the issue of right to counsel at waiver hearings, however, as indicated heretofore, the court indicated its unequivocal agreement that, under the District of Columbia Juvenile Court Act, such proceeding is critically important.

Our comparison of the District of Columbia Juvenile Court Act with the Pennsylvania statute governing juvenile proceedings indicates that the acts are substantially similar in that both proceed on the theory that juvenile court proceedings are civil, rather than criminal, that the State is parens patriae rather than prosecuting attorney and judge, and the disabilities suffered by a juvenile under both statutes are substantially less than those possible on treatment as an adult.[1]

---

[1] See Pennsylvania Juvenile Court Act of June 2, 1933, P. L. 1433, 11 PS §244, providing for "original and exclusive" jurisdiction in the juvenile courts, §245, shielding the juvenile from publicity, §249, providing that juveniles under age 16 are not to be committed with adults, and §261, providing that no order of any juvenile court shall impose any civil liability on the juvenile nor be admissible against the juvenile in any other court.

We recognize that the Kent case is arguably distinguishable on the facts in that there was no issue before the Supreme Court of failure to appoint counsel, but instead, the failure of the juvenile court to afford a waiver hearing to the juvenile even though so requested by privately retained counsel. The message is clear, however, and we have no other course than to regard Kent v. United States as dispositive of the instant case.[2] We, therefore, conclude that since relator was not represented by counsel, nor was he offered same at the certification hearing held by the juvenile court, a hearing must now be held wherein relator will be furnished counsel and the issue will be whether certification should have taken place.[3]

We note that, since petitioner is now past the age of 18, the juvenile court can no longer exercise jurisdiction over him.[4] A redetermination of the waiver question cannot, therefore, be made by the juvenile court. Accordingly, the remedy fashioned by the court of appeals in Black v. United States, 355 F. 2d 104, is appropriate, and the case is herewith referred to the trial judge, Hon. David L. Ullman, to determine whether relator should or should not have been certi-

---

[2] See address of Hon. Paul S. Lehman, President Judge, 58th Judicial District of Pennsylvania, delivered May 5, 1966, to Pennsylvania Council of Juvenile Court Judges. Judge Lehman concurs in our reading of Kent v. U. S.

[3] As further evidence of the need for an attorney, counsel for relator points out that, under 11 PS §257, juveniles may apply for and receive as a matter of right a rehearing after an order of the juvenile court has been entered, that they may likewise appeal directly to the Superior Court from a final order entered on such rehearing, and that Commonwealth v. McClary, 20 D. & C. 2d 10 (1960), holds that a juvenile loses the right to attack his binding over to the grand jury where he fails to follow the procedure prescribed under section 15, (11 PS §257) of the act.

[4] The word "child", as used in this act, means a minor under the age of 18 years: Act of June 2, 1933, P. L. 1433, sec. 1, 11 PS §243(2), 244.

fied for trial as an adult. If it is determined that such certification should not have been made, the conviction shall be vacated and defendant discharged. If, however, it is determined that the certification was proper when originally made, the conviction and the sentence shall stand subject to defendant's right of further appeal.

## II. CONFESSIONS OF CO-CONSPIRATORS

The second contention of relator is that the trial judge committed prejudicial error in admitting into evidence confessions given by two codefendants, both of which confessions implicated relator. It is noted initially that it is questionable whether this contention can be properly raised on a petition for a writ of habeas corpus. As the Supreme Court said in Commonwealth ex rel. Ryan v. Rundle, 411 Pa. 613, habeas corpus is not a substitute for appeal or for a motion for new trial for the correction of trial errors, but is only the proper form for such relief ". . . if the conviction or sentence of the defendant were secured in a proceeding lacking due process of law, or one wherein fundamental rights were denied, or constitutional guarantees impinged upon": Ryan, supra, at page 615. The court said later in that opinion that ". . . the test is whether or not the thing complained of is so flagrantly unjust that the Constitution of the United States steps in to forbid it": Ryan, supra, at 616.

However, assuming that the issue is properly before us, we are of the opinion that the contention is without merit. It has long been the law in Pennsylvania that a confession of a codefendant may be admitted against the party making it although its contents may implicate others, so long as the trial judge carefully protects the nonconfessing defendant's right by properly cautioning the jury that the statement is being admitted only as against the party making it: Commonwealth v. Vento, 410 Pa. 350, 353, and cases cited

therein. We are aware that since the Supreme Court's decision in Vento, supra, the Superior Court in Commonwealth v. Oister, 201 Pa. Superior Ct. 251, ordered a new trial because the nonconfessing defendant in that case ". . . may well have been seriously prejudiced by the introduction of [the confessing defendant's] confession during the joint trial. . . .": Oister, supra, at 260. Moreover, President Judge Herbert S. Levin reached the same conclusion in Commonwealth v. Elliott, 39 D. & C. 2d 251. Despite the decisions by the Superior Court and President Judge Levin, it is our opinion that we are bound by the Supreme Court decision in Vento, supra. Furthermore, there is an important factual distinction between Vento, supra, and Oister, supra, in that in all these cases, defendants were tried before a jury, whereas relator in the instant case was tried on a waiver before Judge Ull-man without a jury.

### III. ALLEGED PERJURED TESTIMONY

The final argument advanced by relator is that his conviction resulted from perjured testimony of a codefendant, James Crump. As was true with relator's argument concerning the admission into evidence of confessions of codefendants, there is the initial question whether this argument can be properly raised on a petition for a writ of habeas corpus: See Commonwealth ex rel. Ryan v. Rundle, supra. Assuming, however, that the issue is properly before us, we are of the opinion that this contention is without merit. The contention of relator is that the statement of James Crump, which was introduced at the trial and which inculpated relator, was false, having been coerced from James Crump by force and threat of force. At the hearing on relator's petition for writ of habeas corpus, James Crump alleged that the statement introduced at their joint trial and which contained his signature was

false. He stated that he signed this statement after the threat of force. He further said at the time that he could not read and thus did not know the contents of the statement to which he affixed his signature. It is noted that he made these same contentions at his trial in 1963. It is our opinion that this witness is not credible and, accordingly, we do not accept the testimony offered at the hearing. Although James Crump testified at the hearing before us that he could not read either at the time he affixed his signature to the statement or at the time of the trial, it is noted from the notes of testimony of this trial, that he was, in fact, able to read:

"Q. I show you what has been marked as Exhibit No. 16. Will you look at that, please?

"BY THE COURT:

"Q. Take your time and read it.

"A. What, Your Honor?

"Q. Read the whole thing.

"THE COURT: I assume that is his statement?

"MR. KILLEEN: Yes, sir.

"A. (continued) 'Central Detective'—

"BY THE COURT:

"Q. No, not out loud; to yourself.

"A. All right (reading)".

It is our opinion that the statement of James Crump which was read into evidence at the trial of 1963 was not coerced and was not false. In any event, the statement given by Crump was admitted as to Crump only: Commonwealth v. Vento, supra.

### ORDER

And now, to wit, July 1, 1966, the case of Commonwealth of Pennsylvania v. Tyrone Savage, November sessions, 1963, 76-79, is herewith referred to Hon.

David L. Ullman for determination of whether relator should or should not have been certified for trial as an adult. If it is determined that said certification should not have been made, the conviction shall be vacated and defendant discharged. If it is determined that the certification is proper, the judgment and sentence of the court shall stand subject to defendant's right of further appeal. The petition is in all other respects dismissed.