## Commonwealth ex rel. Staino, Appellant, *v.* Cavell.

Argued October 3, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*David N. Savitt*, with him *John Patrick Walsh*, for appellant.

*W. D. Hutchinson*, Assistant District Attorney, with him *H. W. Lightstone*, District Attorney, for appellee.

Opinion by Mr. Justice Jones, April 24, 1967:

On the evening of August 7, 1959, the home of one John B. Rich in Pottsville, Schuylkill County, was burglarized and both cash and jewelry were stolen.

On Sunday, April 3, 1960, at approximately 1:00 a.m., Ralph Staino, Jr., was taken into custody in Philadelphia by State and Philadelphia police officers. Staino was placed in an automobile, handcuffed to a police officer and taken to the State Police Barracks at Reading, Berks County. At approximately 4:00 a.m. on the same date, while Staino was in the Reading State Police Barracks with five police officers present, Captain Ferguson of the Philadelphia Police Department advised him: "that [he] did not have to make a statement but if [he] did, anything that [he] said would be used against [him] at [his] trial."[1] Captain Ferguson then read to Staino a statement of one Robert Poulson which implicated Staino in the Rich burglary.[2] Throughout the reading of that statement, Staino time and again stated "I have nothing to say".

Staino was then taken to the Pottsville Court House where he was fingerprinted and photographed between

---

[1] That such warning was given is undisputed.

[2] This statement was repudiated by Poulson at Poulson's trial which took place several months prior to Staino's trial.

5:00-6:00 a.m. on the same date. Several hours later, Staino, without counsel and without being advised of his right to counsel, was given a preliminary hearing at which he stated that "he had nothing to say". Staino was then lodged in Schuylkill County jail in Pottsville. At approximately 10:00 p.m. that same date, Staino was taken to the warden's office in the jail where Captain Ferguson again read to him a statement of Poulson which implicated Staino in the Rich burglary. While that statement was being read and at its conclusion, Staino either stated "I have nothing to say" or he remained mute.

Staino was tried before a court and jury in the Court of Quarter Sessions of Schuylkill County, convicted of larceny and burglary and sentenced to a term of 4 to 9 years. That judgment of sentence was affirmed by the Superior Court (*Commonwealth v. Staino*, 204 Pa. Superior Ct. 319, 204 A. 2d 664 (1964)), and this Court refused allocatur.

On June 8, 1965, Staino filed a petition for a writ of habeas corpus in the Court of Common Pleas of Schuylkill County and that court, after hearing, dismissed Staino's petition. The order of the Court of Common Pleas of Schuylkill County was affirmed by the Superior Court, by an equally divided court (*Commonwealth ex rel. Staino v. Cavell*, 207 Pa. Superior Ct. 274, 217 A. 2d 824 (1966)), and this Court granted allocatur.

At Staino's trial, the statement of Poulson previously read to Staino in Reading and in Pottsville and proof of Staino's conduct consisting of his statements "I have nothing to say" or his silence when confronted with Poulson's statement were admitted into evidence.[3]

---

[3] Staino's counsel objected to the introduction into evidence of Poulson's statement and to proof of Staino's conduct when confronted with such statement. Such objection did not specifically object to the admission of such evidence on constitutional grounds.

Poulson's statement was admitted not upon the ground that it was credible or freely and voluntarily made by Poulson, but only because of that which Staino said or did upon his confrontation by the police with such statement. The theory of the Commonwealth was that Staino, by his conduct, had tacitly admitted the truth of Poulson's statement and the trial court in admitting evidence of such conduct did so in reliance upon *Commonwealth v. Vallone*, 347 Pa. 419, 32 A. 2d 889 (1943).

Staino was tried in May 1961. At that time, the doctrine of tacit admissions was judicially accepted in our Commonwealth. As this Court recently stated in *Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 85, 223 A. 2d 296 (1966): "Pennsylvania has long adhered to the rule of evidence that when a statement made within the hearing and in the presence of a person (except in judicial proceedings) is incriminating in character and naturally calls for a denial, but is not challenged by the accused despite full opportunity and liberty to speak, the statement and the fact of his failure to deny are proper evidence of an implied admission of the truth of the accusatory statement. [Citing authorities]." See also: *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A. 2d 904 (1967). Such was the state of the law in Pennsylvania when Staino was tried. Five years later, the U. S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), ". . . emphasizing the protection afforded a person accused of crime against self-incrimination by the Fifth Amendment to the United States Constitution, definitely ruled that such evidence [tacit admissions] is not constitutionally permissible against an accused in state court criminal trials. Therefore, previous decisions of this Court to the contrary notwithstanding, it is now the law that the prosecution may not use, at trial, evidence that an accused stood mute or failed to deny incrimi-

nating accusations, or statements made in his presence. In short, the accused may not now be penalized for exercising his constitutional right to remain silent under such circumstances": *Shadd,* supra (p. 86), interpreting *Miranda.*

Very recently, we have been confronted with the determination whether the ruling proscribing the use of "tacit admissions" was to be applied retroactively. See: *Commonwealth v. Dravecz,* 424 Pa. 582, 227 A. 2d 904 (1967). In *Dravecz,* Mr. Justice EAGEN in a concurring opinion joined in by a majority of this Court, stated: "Our ruling in Shadd was directly responsive to a statement by the United States Supreme Court in [*Miranda*] . . . . However, since Shadd involved a collateral attack on a judgment finalized several years previously, we held that the new ruling declaring the evidentiary use of 'tacit admissions' impermissible did not apply or affect the validity of the judgment therein.

"The instant trial occurred in September, 1964, and the judgment comes before us for review on direct appeal. Hence, the retroactive application of our new ruling as to the use of evidence of 'tacit admissions' at trial presents a problem not present in Shadd.

"As noted before, our ruling in Shadd proscribing the use of such evidence was prompted by Miranda v. Arizona, supra. Upon further consideration of the problem, it is now my conclusion that the bar to the use of such evidence flowed from the mandate of Malloy v. Hogan, 378 U.S. 1 (1964). Since Malloy was decided on June 15, 1964, the question therefore arises: Must all trials subsequent thereto wherein such evidence was admitted be set aside? I conclude not. It is my view that the date the judgment was finalized is controlling, rather than the date of trial, and if the judgment was finalized before the pronouncement in Miranda v. Arizona on June 13, 1966, then the use of

such evidence at trial does not necessarily invalidate the judgment.

"The above conclusion is based on an analogy of the kindred decisions of Griffin v. California, 380 U.S. 609 (1965) [rehearing denied, 381 U.S. 957 (1965)], and Tehan v. United States ex rel. Shott, 382 U.S. 406 (1966) [rehearing denied, 383 U.S. 931 (1966)]. In Griffin, the United States Supreme Court held for the first time that adverse judicial or prosecutorial comment to the jury on an accused's silence during a state trial violates the proscription against self-incrimination included in the Fifth Amendment to the federal Constitution. While this ruling was necessarily premised upon the prior ruling in Malloy v. Hogan, supra, nevertheless, in Tehan v. United States ex rel. Shott, supra, the court ruled that Griffin did not apply to all cases tried subsequent to Malloy but only to those not 'finalized', in the sense of Linkletter v. Walker, 381 U.S. 618 (1965), as of the date the decision in Griffin was announced.

"The relationship between Malloy and Miranda in the realm of 'tacit admissions' is closely analogous to the relationship between Malloy and Griffin, in the realm of adverse comment on an accused's silence at trial. Just as the decisional seed which later bloomed into Griffin is impliedly imbedded in Malloy, so too is Miranda's clear proscription of 'tacit admission' evidence genealogically connected to Malloy. However, while the proscription against adverse comment on the accused's silence at trial was implicitly promulgated by Malloy, it was not explicated therein. This was left to Griffin. Likewise, while the proscription against evidentiary use of 'tacit admissions' was implicit in Malloy, it was Miranda that first spelled it out. Hence, it logically follows from Tehan that the ruling banning the evidentiary use of 'tacit admissions', first explicated in Miranda, need only be applied to those cases where-

in the judgment was not finalized as of the date Miranda was announced."

The judgment in the case at bar had become *final* long prior to the *Miranda* ruling. Under the rationale of *Dravecz, Miranda* would not apply and affect the use of the "tacit admission" rule by the Commonwealth during the trial of this case. Accordingly, we find no merit in this contention of Staino.

Staino next contends that, applying the law as it existed prior to June 22, 1964 (the date upon which *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758 (1964) was decided) and June 13, 1966 (the date on which *Miranda*, supra, was decided), the denial to Staino of the right to the assistance of counsel, under the instant circumstances, violated his constitutional rights and the lack of such counsel effectively denied him a fair trial. It is Staino's theory that the police officers, by trickery, purposely created a situation wherein Staino's conduct could be interpreted as a tacit acquiescence, that such apparent acquiescence resulted from a form of police coercion rather than from Staino's free will and volition and that had Staino at that time had the assistance of counsel such apparent tacit acquiescence would have been avoided.

In effect, Staino now seeks to bring himself within the exclusionary language of the United States Supreme Court in *Johnson v. New Jersey*, 384 U.S. 719, "At the same time, our case law on coerced confessions is available for persons whose trials have already been completed, providing of course that the procedural prerequisites for direct or collateral attack are met. See: Fay v. Noia, 372 U.S. 391 [83 S. Ct. 822] (1963). Prisoners may invoke a substantive test of voluntariness which, because of the persistence of abusive practices, has become increasingly meticulous through the years. See: Reck v. Pate, 367 U.S. 433 [81 S. Ct. 1541] (1961). That test now takes specific account of the

failure to advise the accused of his privilege against self-incrimination or to allow him access to outside assistance. See: Haynes v. Washington, 373 U.S. 503 [83 S. Ct. 1336] (1963); Spano v. New York, 360 U.S. 315 [79 S. Ct. 1202] (1959). Prisoners are also entitled to present evidence anew on this aspect of the voluntariness of their confessions if a full and fair hearing has not already been afforded them. See: Townsend v. Sain, 372 U.S. 293 [83 S. Ct. 745] (1963). Thus, while Escobedo and Miranda provide important new safeguards against the use of unreliable statements at trial, the nonretroactivity of these decisions will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim." *Johnson v. New Jersey,* supra, 384 U.S. 719, 730, 86 S. Ct. 1772 (1966).

In order to place in proper prospective Staino's argument, we must first look to the record: (1) admittedly, prior to the conduct of Staino which the Commonwealth relied upon as a tacit admission, Staino had been warned of his right to remain silent and that anything he said would be used against him; (2) Staino was not advised of his right to the assistance of counsel nor did he request such assistance (See: *Davis v. North Carolina,* 384 U.S. 737, 86 S. Ct. 1761 (1966); *Commonwealth v. Jefferson,* 423 Pa. 541, 226 A. 2d 765 (1967)); (3) after having warned Staino of his right to remain silent, the police officers confronted him with Poulson's statement and then used his conduct after such confrontation as evidence of a tacit admission; (4) Poulson did not testify at Staino's trial and, therefore, Staino had no opportunity to inquire into the truth of Poulson's implicating statement. Basic in Staino's contention is that we must equate a tacit admission with a confession[4] and extend the rule of

---

[4] "In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privi-

*Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964) to include tacit admissions.

In *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964) and in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), the U. S. Supreme Court granted to every suspect in a criminal proceeding the right to assistance of counsel during a police pretrial or "in-custody" interrogation. However, under the ruling in *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966), neither *Escobedo* nor *Miranda* apply to the case at bar because the trial antedated both decisions.

The law as to the admissibility of confessions obtained from an accused when he was without the benefit of the assistance of counsel prior to *Escobedo* and *Miranda* is set forth in *Commonwealth ex rel. Mullenaux v. Myers,* 421 Pa. 61, 217 A. 2d 730 (1966): "Accordingly, appellant had no absolute right to the assistance of counsel during the pretrial stage of the proceedings. *Crooker v. California,* 357 U.S. 433, 78 S. Ct. 1287 (1958); *Cicenia v. LaGay,* 357 U.S. 504, 78 S. Ct. 1297 (1958). The absence of counsel at appellant's interrogation following his arrest may not be deemed violative of his Fourteenth Amendment rights *unless he was 'so prejudiced thereby as to infect his subsequent trial with an absence of "that fundamental fairness essential to the very concept of justice"' . . . .*" (Emphasis supplied). In *Crooker v. California,* 357 U.S. 433, 439, 78 S. Ct. 1287, 1292 (1958), the U. S. Supreme Court said: "Under these principles, state refusal of a request to engage counsel violates due process not only if the accused is deprived of counsel at trial on the merits . . . but also if he is deprived of counsel for any part of the pretrial proceedings, *provided*

---

lege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. [Citing authorities] . . . ." *Miranda,* supra, p. 468, n.37.

*that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice'.*" (Emphasis supplied). See also: *Davis v. North Carolina,* supra; *Commonwealth v. Negri,* 419 Pa. 117, 123, 124, 213 A. 2d 670 (1965).

Our scrutiny of this record reveals no prejudice to Staino due to the absence of counsel on the occasions when he was confronted by Poulson's statement. To find such prejudice an inference would have to be drawn from an inference: first, an inference would have to be drawn that the police officers in reading Poulson's statement had engaged in "trickery", an inference lacking any evidentiary support; second, an inference that, had Staino had counsel when he was confronted with Poulson's statement, counsel would have recognized the police tactics as "trickery" and would have advised Staino to remain silent or to say nothing, which, incidentally, is just what Staino did. The "prejudice" envisioned in *Crooker* and *Mullenaux,* supra, cannot be founded on such legal legerdemain.

It is next urged that Staino was deprived of the right to confront and examine Poulson as to the *truth* of his implicating statement, a right constitutionally guaranteed. We find no relevancy between the right of confrontation and the tacit admission rule. The probative force of the accusatory or implicating statement arises not from the credibility of the maker of the statement but from the silence of the accused in response to the statement. The question of the credibility of the maker of the statement is not in issue under the tacit admission rule and the cross-examination of the maker of such statement could serve no valid purpose. When the trial court admitted the introduction into evidence of Poulson's statement it did so not because of the credibility of that statement but because of the silence of Staino when confronted with such

statement. See: *Commonwealth v. Brooks*, 355 Pa. 551, 554, 50 A. 2d 325 (1947).

Staino next contends that, under *Jackson v. Denno*, supra, the tacit admission of Staino being the equivalent of a confession, a separate hearing should have been held to determine the *voluntariness* of his tacit admission. Accepting for the purpose of this argument the equation of a tacit admission and a confession, it must be noted that Staino does *not* seek a remand to the court below to hold a separate hearing to determine the voluntariness of his admission.[5] On the contrary, he wants the Court now to hold that "the facts are clear that the tacit admission obtained from [Staino] was not voluntarily given but obtained through the planned use of trickery and deception" and, therefore, the tacit admission should have been excluded as evidence.

The coercion which Staino claims did not arise from any beatings, threats or physical abuse by the police officers but from an "undeviating intent of the officers to extract a confession" from Staino and from an illegal detention. As to Staino's claim of an illegal detention, the record shows unequivocally that Staino was promptly and expeditiously arraigned and given a preliminary hearing and that he was not subjected to any such illegal detention as condemned in *Mallory v. United States*, 354 U.S. 449, 77 S. Ct. 1356 (1957). Neither the law nor the record facts support Staino's claim of coercion on any other grounds. *Spano v. New York*, 360 U.S. 315, 79 S. Ct. 1202 (1959); *Rogers v. Richmond*, 365 U.S. 534, 81 S. Ct. 735 (1961); *Bram v. United States*, 168 U.S. 532, 18 S. Ct. 183 (1897); *Flaherty v. United States*, 355 F. 2d 924 (1966), upon which Staino relies are factually inapposite. A care-

---

[5] In his brief, Staino's counsel states "such a hearing would afford little meaning since the facts surrounding the manner in which the tacit admission was obtained are undisputed and fully set forth [in the brief]." (Supplemental Brief p. 12).

ful examination of this record fails to disclose evidence of any coercion such as would impugn, or even cast doubt upon, the voluntariness of the tacit admission of Staino.

Lastly, urging that we adopt the statement in *Johnson v. New Jersey,* supra (p. 733), that "States are still entirely free to effectuate under their own law stricter standards [of retroactivity] than those [enunciated in Johnson] and to apply those standards in a broader range of cases than is required by this decision," Staino requests us to adhere to our ruling in *Commonwealth v. Negri,* 419 Pa. 117, 128, 129, 213 A. 2d 670 (1965) that *Escobedo* should apply to cases wherein the judgment of sentence had not become final *prior* to June 22, 1964, the date of the ruling in *Escobedo.*[6] This request was considered and rejected in *Commonwealth ex rel. Wilkes v. Maroney,* 423 Pa. 113, 116, 222 A. 2d 856 (1966) and *Commonwealth v. Senk,* 423 Pa. 129, 132, 133, 223 A. 2d 97 (1966) wherein this Court reconsidered its ruling in *Negri* and accepted the ruling laid down in *Johnson,* supra, as controlling.

We fail to find upon this record and under the law any reason to justify the issuance of a writ of habeas corpus.

Order affirmed.

Mr. Chief Justice BELL concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Only recently this Court has held that while tacit admissions may not be introduced in future trials, the Commonwealth's utilization of a tacit admission will not vitiate any trial which became final, that is where the defendant has exhausted all means of direct appel-

---

[6] The judgment in *Staino* did not become final until February 8, 1965. As to the meaning of "final", see: *Linkletter v. Walker,* 381 U.S. 618, 622, 85 S. Ct. 1731 (1965).

late review, before June 13, 1966. *Commonwealth v. Dravecz*, 424 Pa. 582, 592, 227 A. 2d 904, 909 (1967) (EAGEN, J., concurring). I have already expressed my disagreement with the majority's decision not to give full retroactive effect to the demise of the tacit admission rule. *Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 91, 223 A. 2d 296, 301 (1966) (dissenting opinion); *Commonwealth v. Dravecz*, 424 Pa. 582, 595, 227 A. 2d 904, 911 (1967) (concurring opinion). See also *United States ex rel. Smith v. Brierly*, 267 F. Supp. 274 (E.D. Pa. 1967) (J.S. LORD, III, J.).

Petitioner's conviction did become final before June 13, 1966; accordingly if this case involved a typical tacit admission I would simply note a dissent based upon my opinion in *Shadd* and Judge HOFFMAN's excellent dissenting opinion in the instant case, 207 Pa. Superior Ct. 274, 278, 217 A. 2d 824, 825 (1966), with which I am in full accord. However, I believe it is incumbent upon me to explain why *Dravecz* does not control this case.

Ralph Staino was arrested at 1:00 A.M. on Sunday, April 3, 1960 in Philadelphia, and was then taken to the Reading Police Barracks, located some sixty miles from the scene of his arrest. When Staino arrived in Reading, he was greeted by a police captain who told him of the reason for his arrest, informed him that he had a constitutional right to remain silent and warned him that anything he might say could be used against him at trial. Thereupon, the police read to Staino a confession by one Robert Poulson, later repudiated, implicating Staino in the burglary for which he stands convicted; Staino responded by either informing the police that "I have nothing to say", or by remaining mute. Yet despite the warnings given him prior to the reading of Poulson's confession, Staino's decision not to deny the truth of the statement was admitted, over objection, at his trial as a tacit admission.

The theory upon which tacit admissions have, in the past, been held to be reliable evidence is that when a statement "made within the hearing and in the presence of a person (except in judicial proceedings) is incriminating in character and naturally calls for a denial, but is not challenged by the accused despite full opportunity and liberty to speak, the statement and the fact of his failure to deny are proper evidence of an implied admission of the truth of the accusatory statement." *Commonwealth ex rel. Shadd v. Myers,* 423 Pa. 82, 85, 223 A. 2d 296, 298 (1966). In my view Poulson's statement did not naturally call for a denial from Staino. Staino's so-called tacit admission was the result of police tactics which amounted to "an indefensible sort of entrapment," *Raley v. Ohio,* 360 U.S. 423, 426, 438, 79 S. Ct. 1257, 1260, 1266 (1959); *Cox v. Louisiana,* 379 U.S. 559, 571, 85 S. Ct. 476, 484 (1965), incompatible with the fourteenth amendment.

In *Raley v. Ohio,* supra, the defendants were convicted of contempt for their failure to answer questions during their appearance before the Ohio Legislature's Un-American Activities Commission. Ohio has a statute which grants witnesses who appear before legislative committees immunity from criminal prosecution based upon their testimony and declares that said testimony shall not be used as evidence in a criminal proceeding. Despite the existence of this statute, the chairman of the committee informed the defendants that they were entitled to rely upon their privilege against self-incrimination and need not answer questions which might tend to incriminate them. Nevertheless they were later tried and convicted of contempt, the Ohio Supreme Court sustained their convictions on the theory that the defendants knew or were presumed to know about the Ohio immunity statute. The Supreme Court of the United States, concluding that state officials had actively misled the defendants,

reversed: "While there is no suggestion that the Commission had any intent to deceive the appellants, we repeat that to sustain the judgment of the Ohio Supreme Court on such a basis after the Commission had acted as it did would be to sanction the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him. Cf. Sorrells v. United States, 287 U.S. 435, 442 [53 S. Ct. 210, 212 (1932)]." 360 U.S. at 438, 79 S. Ct. at 1266.[1]

Admittedly *Raley* and the instant case are distinguishable on their facts; however, I can see no logical difference between them. In *Raley,* the defendants, relying upon the advice of state officials, were found guilty of contempt whereas Staino's reliance resulted in a highly prejudicial "admission" which played an important part in his conviction. Accordingly I view *Raley* as controlling and would grant Staino a new trial.

The Commonwealth concedes that if Staino was relying upon the advice of the police, no presumption of guilt may be raised nor may any inference be drawn from his silence. However, it argues that it is for the jury to determine whether the accused is relying on his constitutional right and that the jury in the instant case was properly instructed to disregard the admission if they found that he was. The Commonwealth's position finds support in our cases, see, e.g., *Commonwealth v. Vallone,* 347 Pa. 419, 422, 32 A. 2d 889, 891 (1943); *Commonwealth v. Sindel,* 205 Pa. Superior Ct. 355, 361, 208 A. 2d 894, 897 (1965); however, this position is not only inconsistent with *Raley v. Ohio,* supra,[2] but also with *Jackson v. Denno,* 378 U.S. 368, 84

---

[1] See also *Cox v. Louisiana,* 379 U.S. 559, 85 S. Ct. 476 (1965).

[2] In *Raley,* the Supreme Court refused to condone the Ohio Supreme Court's speculation that the defendants would have behaved the same way regardless of what the Commission told them. 360 U.S. at 439, 79 S. Ct. at 1267.

S. Ct. 1774 (1964), a decision which unquestionably has retroactive application. E.g., *Commonwealth v. Senk,* 423 Pa. 129, 223 A. 2d 97 (1966); *Commonwealth ex rel. Butler v. Rundle,* 416 Pa. 321, 206 A. 2d 283 (1965).

Prior to *Jackson,* confessions in this Commonwealth were also submitted to the jury with instructions to disregard them unless they were found to have been the product of the defendant's free will. E.g., *Commonwealth v. Coyle,* 415 Pa. 379, 405-06, 203 A. 2d 782, 795-96 (1964); *Commonwealth v. Graham,* 408 Pa. 155, 162, 182 A. 2d 727, 730 (1962). In *Jackson,* this procedure was held unconstitutional because of the strong possibility that a jury, notwithstanding proper instructions, might not understand the policies behind excluding involuntary, but true, confessions and might thus utilize an involuntary confession in reaching its conclusion as to the defendant's ultimate guilt. 378 U.S. at 386-89, 84 S. Ct. at 1786-87. The same danger, of course, is inherent in the tacit admission situation, especially since the third party statement is hearsay and the declarant is not subject to cross-examination.[3]

Staino therefore is entitled to the protection afforded by *Jackson. United States ex rel. Gomino v. Maroney,* 231 F. Supp. 154, 157 (W.D. Pa. 1964). In my view, however, there is no need to remand this case for a hearing because I believe that when a defendant has been warned of his right to remain silent any subsequent "tacit admission" is, as a matter of law, "involuntary."

Even granting the validity of the majority's tacit admission rule outlined in *Commonwealth v. Dravecz,*

---

[3] For a convincing argument that the tacit admission rule violates the defendant's constitutional right to confrontation, see Judge HOFFMAN's dissenting opinion in the instant case, 207 Pa. Superior Ct. 274, 290-92, 217 A. 2d 824, 832-33 (1966).

382

424 Pa. 582, 592, 227 A. 2d 904, 909 (1967) (EAGEN, J., concurring), Staino's conviction violates the fourteenth amendment. I would grant a new trial.

Mr. Justice MUSMANNO joins in this dissenting opinion.