Commonwealth ex rel. Berkery, Appellant, *v.* Myers.

530

Argued December 16, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Edward F. Kane,* with him *Bean, DeAngelis, Tredinnick & Giangiulio,* for appellant.

*William D. Hutchinson,* Assistant District Attorney, with him *Harry W. Lightstone,* District Attorney, for appellee.

OPINION BY ERVIN, P. J., June 16, 1967:

This is an appeal from an order of the court below dismissing appellant's petition for writ of habeas corpus after hearing and argument. The petition was filed November 18, 1965.

This is the second time the case has been before us. In *Com. v. Staino,* 204 Pa. Superior Ct. Ct. 319, 204 A. 2d 664 (allocatur refused by the Supreme Court, 204 Pa. Superior Ct. xxxvii), we affirmed the conviction of this defendant on a charge of burglary in an opinion filed November 12, 1964. At the trial the tacit admission of the co-defendant Staino to a signed confession of a confederate, Robert Poulson, implicating

the defendant Staino, was admitted into evidence after Staino either remained silent or stated, "I have nothing to say." This evidence was received under the well established Pennsylvania doctrine of tacit admissions and our Supreme Court, in an opinion filed April 24, 1967 in the case of *Com. ex rel. Staino v. Cavell,* 425 Pa. 365, 228 A. 2d 647, sustained the conviction.

In that opinion our Supreme Court held that the decision of the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), ruling that such evidence is not constitutionally permissible against an accused in state court criminal trials, was not to be applied retroactively to cases in which the judgment was finalized prior to June 13, 1966, the date of the pronouncement in the *Miranda* case. The present case was finalized on November 12, 1964 when we affirmed the conviction of the appellant in a direct appeal, our Supreme Court subsequently having refused an allocatur.

Counsel for appellant Berkery now argues that the tacit admission of Staino to the signed confession of Poulson (in which Berkery was also implicated) amounted to a confession by Staino and that the court should have instructed the jury with respect to Staino's alleged confession as it applied to Berkery. He argues in the next breath that when Staino said, "I have nothing to say", the only logical construction of this statement is that he, Staino, was not admitting to anything whatsoever. Notwithstanding this inconsistency, we believe that the court's instruction to the jury clearly met this objection. The court charged as follows: "In connection with this statement, that is, Poulson's statement, we say to you at this point, as we have during the course of the trial, that, Defendant Berkery not having been present, the statement would have no connection, as far as this case is concerned, in regard to Defendant Berkery inasmuch as he was not present

when Captain Ferguson read the Poulson statement to Staino. Berkery was not there at the time, and hence, *that portion of the evidence cannot be considered by you in connection with Defendant Berkery.*" (Emphasis supplied)

Our Court has decided that, under proper instructions, a confession, although it implicates other defendants, is admissible as a whole: *Com. v. Berman,* 119 Pa. Superior Ct. 315, 181 A. 244; *Com. v. Dolan,* 155 Pa. Superior Ct. 453, 458, 459, 38 A. 2d 497. Counsel for the appellant strongly relies upon the case of *Com. v. Oister,* 201 Pa. Superior Ct. 251, 191 A. 2d 851, but he does not point out that in that case the writer of this opinion, joined by Judges WRIGHT and WOODSIDE, dissented. Furthermore, in that case the late Judge FLOOD, who wrote the majority opinion, stated: "While the evidence, exclusive of the Oister confession, may have been sufficient to convict him, *it was not of such strength as to exclude the possibility that Brockerman was seriously prejudiced by the fact that the jury which convicted him heard Oister's confession that he had hired Brockerman to set the fire and paid him for doing so.*" (Emphasis supplied)

We do not believe that such a statement could be made about the present case. In the present case Richard Francis Blaney, who was not involved in the present burglary, testified that Berkery had admitted to him that he had participated in the burglary of the Rich home and that there was $478,000 taken, out of which he got better than $100,000 himself, as a result of which he had been able to indulge in a large number of expensive luxuries, such as a $10,000 pleasure trip to California, a $2,000 mink stole for his wife, and a brand new $5,000 gold-like Lincoln automobile. He further testified that Berkery took him to Pottsville and showed him where the burglary had taken place and gave him complete details of the burglary. The

visit to Pottsville was made in preparation for another burglary which was to be later executed in order to obtain the bonds and securities which had been left in the safe at the time of the August 7, 1959 burglary. The second burglary never occurred because of the incarceration of Richard Blaney for some prior offense.

At the trial Blaney was subjected to severe cross-examination in an attempt to break down his testimony but the attempt failed. We believe that the trial judge properly exercised his discretion in this matter and, in addition, carefully and adequately charged the jury that it was not to give any consideration to this testimony as to the defendant Berkery.

Furthermore, in the direct appeal Berkery's then counsel had an opportunity to thoroughly argue this matter and it should not now be considered in this collateral attack.

It is also argued on behalf of the appellant that the trial judge erred when he inquired of the jury whether any of them had read an article in the Philadelphia Daily News headlined "$50,000.00 Spree Laid to Berkery." It should be pointed out that the reference to this article was invited by appellant's trial counsel. We do not know how the court could have referred to this article other than it did. To identify the article by referring to its headline was the only logical way to call it to the jury's attention. Trial counsel certainly could not have thought this prejudiced the rights of his client at the time of trial. He made no objection to the statement nor did he make any motion to strike it from the record. The matter was not argued in the direct appeal and certainly is not the type of question which should now be permitted in this collateral proceeding. Furthermore, we do not believe that the jury was prejudiced by the court's question. The record shows that the assistant district attorney who tried the case had already referred to appellant's sudden acquisi-

tion of wealth in his opening to the jury. There was considerable evidence in the trial other than this to prove appellant's sudden acquisition of wealth and we do not believe that the reference to the newspaper article, invited by defense counsel, in any way prejudiced the appellant's case.

It is also argued that the testimony of Richard F. Blaney as to his past criminal record and alleged bad moral character should not have been permitted by the trial judge. It should be pointed out that this testimony was brought out on cross-examination by appellant's trial counsel. It was not brought out by the Commonwealth and therefore the cases cited by counsel for the appellant to sustain this argument are not in point. Furthermore, the answers of Blaney were fairly responsive to the questions of the appellant's trial counsel and should have been anticipated. Furthermore, this is the type of matter that should have been raised in the direct appeal and it should not be now permitted in this collateral proceeding.

In an excellent article by Professor Paul M. Bator on "Finality in Criminal Law," 76 Harvard Law Review 441, 452 (1963), he points out that the proper resolution of the necessary tension between finality in the criminal law and the protection of fundamental individual rights, is whether the affected defendant has been given an opportunity to fully and fairly litigate any questions relating to those rights. This appellant had that opportunity in his direct appeal, where he was represented by very able counsel.

Order affirmed.

HOFFMAN, J., dissents.